UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ROBERT H. CAMPBELL,<br><br>                           Plaintiff,<br><br>vs.<br><br>RITE AID CORPORATION and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>                         Defendants. | Civil Action No.: 7:13-cv-02638-BHH<br><br>**Opinion and Order** |

      This matter is before the Court on the Defendant Rite Aid Corporation's motion to dismiss and strike the jury demand (ECF No. 8). Defendant Prudential Insurance Company of America joined the motion to dismiss with regard to causes of action 3-6 and the request to strike Plaintiff's jury trial demand. For the reasons set forth in this order, the Court grants the Defendants' motions.

## **BACKGROUND**

      Plaintiff Robert H. Campbell filed this ERISA action against Defendants Rite Aid Corporation ("Rite Aid") and The Prudential Insurance Company of America ("Prudential") on August 27, 2013, in the Court of Common Pleas for Spartanburg County. Defendants removed the case to this Court on September 26, 2013. According to the complaint, Plaintiff was employed as a pharmacist with Defendant Rite Aid, and, as a part of his employment, obtained accidental dismemberment insurance through a policy (the "Policy") issued by Defendant Prudential as a part of an ERISA qualified plan (the "Plan"). (Compl. ¶¶ 4-5, ECF No. 1-1.) Plaintiff alleges that on November 28, 2011, while sitting at his desk at work, he "slipped and caught himself"

and the movement caused a stitch in an eye implant that had been placed in April of 1999 to become dislodged. (*Id.* ¶ 6, 8.) As a result of the dislodged stitch, Plaintiff underwent surgery during which he "became totally blind." (*Id.* ¶ 6.)

Plaintiff submitted a claim on the Policy seeking accidental dismemberment benefits. In a letter dated April 18, 2012, Defendant Prudential denied Plaintiff's claim and provided the following explanation:

> If not for the cataract surgery, you could not have had [t]he dislocated intraocular lens implant in April 2011 and in December 2011 that resulted in your loss of sight in the left eye. Therefore, your loss did result indirectly from sickness (Cataract) and directly from complications of surgical treatment (Cataract Surgery Left Eye with Intraocular Lens Placement on 4/7/99) of sickness."

(*Id.* ¶ 8.) Defendant Prudential referred Plaintiff to language in the Policy stating that a loss would be covered if, "[y]ou sustain an accidental bodily injury while a covered person, the loss results directly from that injury and from no other cause[,]" and if "[y]ou suffer the loss within 365 days of the accident." Prudential further indicated that the Policy excluded from coverage losses that resulted from sickness and medical or surgical treatment of sickness. (*Id.* ¶ 8.) Plaintiff alleges that Prudential lacks a proper basis for denial of his claim and filed this action against Prudential and Rite Aid to recover benefits under the Policy. Plaintiff also claims that he is entitled to benefits as a result of certain statements or omissions made by Rite Aid regarding the Policy.

Defendant Rite Aid filed a motion to dismiss the complaint and to strike Plaintiff's jury demand (ECF No. 8) on October 24, 2013. Defendant Prudential joined the motion to strike the jury demand and to dismiss causes of action 3-6 (ECF No. 11). Plaintiff filed a response in opposition to the motion (ECF No. 15) on November 19, 2013, and Defendants filed replies on December 9, 2013 (ECF Nos. 20 & 21).

## **STANDARD OF REVIEW**

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009). Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed.R.Civ.P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual

3

allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).  "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

## DISCUSSION

### I.     CAUSES OF ACTION 1 AND 2

Plaintiff's first and second causes of action fail to state a claim against Defendant Rite Aid.  As Rite Aid points out, the parties agree that the accidental dismemberment benefits that Plaintiff seeks are insured by Defendant Prudential, and Plaintiff has asserted no basis for imposing liability on Defendant Rite Aid.  Rather, Plaintiff alleges that it was Defendant Prudential who wrongly denied his claim for benefits.  (*See* Compl. ¶¶ 8, 10, 11, 20, 29, and 30.)  It is not clear from the complaint what, if any, role Rite Aid played in this decision.  Furthermore, Plaintiff failed to respond to Rite Aid's argument regarding causes of action 1 and 2, and the Court can only assume that Plaintiff concedes the argument.  Causes of action 1 and 2 remain pending against Prudential, which has not moved for dismissal of these claims.

### II.    Causes of Action 3-6

Plaintiff also seeks equitable relief under 29 U.S.C. § 1132(a)(3), which authorizes a cause of action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  Plaintiff's third, fourth, fifth, and sixth causes of action

4

respectively advance claims for breach of fiduciary duty, affirmation, equitable estoppel, and unjust enrichment.

### A. LEGAL OVERVIEW

In *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), the United States Supreme Court described 29 U.S.C. § 1132(a)(3) as a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." The Court explained that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* In *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101(4th Cir. 2006), the Fourth Circuit Court of Appeals joined the "great majority of circuit courts" holding that "a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)." *Id.* at 106 (citing *Antolik v. Saks, Inc.,* 463 F.3d 796, 803 (8th Cir. 2006); *Ogden v. Blue Bell Creameries U.S.A., Inc.,* 348 F.3d 1284, 1287–88 (11th Cir. 2003); *Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610–11 (5th Cir. 1998); *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615–16 (6th Cir. 1998); *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474–75 (9th Cir. 1997); *Wald v. Sw. Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir. 1996)). The Fourth Circuit observed that the equitable relief sought by Korotynska was "pursued with the ultimate aim of securing the remedies afforded by § 1132(a)(1)(B)," and reasoned that if equitable relief were available in such a case, "*every* wrongful denial of benefits could be characterized as a breach of fiduciary duty." *Id.* at 107-108 (quotation marks and citation omitted). Thus, the court made clear that a claimant may not "repackage his or

her denial of benefits claim as a claim for breach of fiduciary duty. *Id.* at 106 (quotation marks and citation omitted).

More recently, in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), the Supreme Court expanded the equitable remedies available to a plaintiff suing fiduciaries under Section 1132(a)(3). The district court in *Amara* found that the plaintiffs' cause of action was authorized by § 502(a)(1)(B), which is the "recovery-of-benefits-due-provision" that Defendants in the instant action cite as the only appropriate avenue for Plaintiff's claims. *See id.* at 1871. Pursuant to this provision, the district court in *Amara* altered the terms of a new pension plan adopted by the defendant, Cigna Corporation, because it found that Cigna had misrepresented the terms of the plan to its employees. The district court considered the issue of whether relief was appropriate under § 502(a)(3), but declined to rule on the issue in part because it had already found that relief should be granted under § 502(a)(1)(B). The Second Circuit affirmed the decision, but the Supreme Court reversed, finding that although § 502(a)(1)(B) authorized the district court to order a party to pay benefits due under a plan, it did not authorize the court to first change the terms of the plan and then order payment. *See id.* at 1876-77. The Court held that such relief, which it characterized as "reformation of the terms of the plan" and a "remedy [that] resembles estoppel," was equitable in nature and thus could only be granted pursuant to § 502(a)(3). *See id.* at 1879-80. Significantly, in instructing the district court that the relief sought was appropriate under § 502(a)(3), the Supreme Court did not hold that a party could seek relief for the same injury under both § 502(a)(1)(B) and § 502(a)(3) or that the Court could grant relief under both provisions. Rather, it suggested that its finding that relief was not available under § 502(a)(1)(B)

6

eliminated at least one of the district court's reasons for not using § 502(a)(3). *See id.* at 1878.

Relying on *Amara*, the Fourth Circuit held that a plaintiff seeking equitable relief under § 502(a)(3) could recover more than wrongfully accepted premiums and could obtain "make whole relief" such as "surcharge and equitable estoppel remedies." *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 180, 182 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit observed that *Amara* had done away with "perverse incentives" that encouraged fiduciaries "to wrongfully accept premiums" safe in the knowledge that "the biggest risk [they] would face would be the return of their ill-gotten gains" in those rare instances "where plan participants actually needed the benefits for which they had paid." *Id.* at 183. However, like *Amara*, *McCravy* was a case in which relief was not available under § 502(a)(1)(B), and the plaintiff in *McCravy* explicitly conceded as much. Indeed, the central issue in *McCravy* was the existence of coverage, not the denial of benefits. Thus, while *McCravy* offers clear authority and a compelling rationale for the availability of robust equitable remedies, it is not clear what if any impact it has on the core holding in *Varity* and *Korotynska*.

Plaintiff contends that Defendants' reliance on *Varity* and *Korotynska* is "misplaced" following *Amara*. (Pl.'s Resp. in Opp. to Mot. to Dismiss 4, ECF No. 15.) However, subsequent to *Amara*, the Fourth Circuit cited *Korotynska* for the very proposition Plaintiff claims *Amara* negates. *See Savani v. Washington Safety Mgmt. Solutions, LLC*, 474 F. App'x 310, 313 n.2 (4th Cir. 2012) ("The district court also properly dismissed count two on the grounds that a party may not request simultaneous relief under both ERISA, § 502(a)(1)(B) and § 502(a)(3)" (citing *Korotynska*, 474 F.3d at

7

107)). Plaintiff argues that *Amara* and *McCravy* "allow a party to seek equitable relief pursuant to 29 U.S.C. § 1132(a)(3), placing no qualifier on whether another avenue of recovery is available." (Pl.'s Resp. in Opp. to Mot. to Dismiss 5, ECF No. 15.) The Court disagrees with Plaintiff's analysis to the extent that Plaintiff contends that *Amara* and *McCravy* completely overruled the rule set forth in *Varity* and *Korotynska*. While *Amara* and *McCravy* certainly expand the types of equitable relief available to some ERISA plaintiffs, this Court agrees with the significant majority of other district courts that have considered the issue that *Amara* does not alter the rule set down in *Varity* that equitable remedies are only available when adequate relief is not available elsewhere. *See Leach v. Aetna Life Ins. Co.*, 2014 WL 470064, at *4 (D. Md. Feb. 5, 2014) (citing *Biglands v. Raytheon Empl. Sav. & Inv. Plan,* 801 F.Supp.2d 781, 785–86 (N.D. Ind. 2011); *Harp v. Liberty Mut. Group, Inc.,* 2013 WL 5462290, at *4–5 (M.D.N.C. Sept. 30, 2013); *Nemitz v. Metro. Life Ins. Co.,* 2013 WL 3944292, at *4 (N.D. Ill. July 31, 2013); *Roque v. Roofers' Unions Welfare Trust Fund,* 2013 WL 2242455, at *7 (N.D.Ill. May 21, 2013); *Krase v. Life Ins. Co. of N. Am.,* 2012 WL 4483506, at *3 (N.D. Ill. Sept. 27, 2012)); *see also Harris v. Aetna Life Ins. Co.*, 2013 WL 5935144, at *4 n.3 (D.S.C. Nov. 5, 2013). *But see Strickland v. AT & T Umbrella Ben. Plan No. 1*, 3:10-CV-268-RJC-DSC, 2012 WL 4511367 (W.D.N.C. Oct. 1, 2012) ("Defendant's reliance on pre-*Amara* cases is misplaced."). This Court is not convinced that claims under § 502(a)(1)(B) and § 502(a)(3) can *never* be pled in the alternative or brought in the same complaint,[1] but

---

[1] *See, e.g., Winkelspecht v. Gustave A. Larson Co.*, 10-C-1072, 2012 WL 1995103 (E.D. Wis. June 1, 2012), appeal dismissed (July 19, 2012) ("[A] direct citation to § 1132(a)(1)(b) does not exclude relief sought under other grounds; pleadings do not exist in a zero-sum world in which relief sought under one part of a statute necessarily per se excludes relief sought on additional bases.").

8

where it is clear that a party has simply "repackaged" a § 502(a)(1)(B) claim for the wrongful denial of benefits and placed a § 502(a)(3) bow on top, dismissal is warranted. Plaintiff's third cause of action is a perfect example of such a claim.

### B. CAUSE OF ACTION 3

Plaintiff's third cause of action alleges that Defendants breached their fiduciary duties through a number of acts or omissions that culminated in a decision to deny benefits. Such acts or omissions include, "not following the plan document(s)," (Compl. ¶ 33), "failing to investigate Plaintiff's claim for accidental dismemberment benefits by not seeking diligently the opinions of Plaintiff's treating physicians and/or . . . failing to give proper consideration of evidence produced by plaintiff, (*id* ¶ 35), "disregard[ing] the opinion of Plaintiff's treating physician," and "neglect[ing] to speak with [Plaintiff's treating physician] to discuss Plaintiff's accidental dismemberment claim." Though Defendants may have taken numerous steps to reach the allegedly incorrect conclusion that Plaintiff was not entitled to benefits, there is but one injury alleged – the wrongful denial of benefits. Accordingly, Plaintiff's third cause of action for breach of fiduciary duty is a repackaged claim for wrongful denial of benefits and is accordingly dismissed.

### C. CAUSES OF ACTION 4 AND 5

Plaintiff's fourth and fifth causes of action rehash his claims that he is entitled to benefits under the terms of the Plan, (*see id.* ¶¶ 47, 50, 52), while paradoxically claiming that the Plan should be reformed and that Defendants should be estopped from enforcing its terms, (*see id.* ¶¶ 46, 54). To the extent that the fourth and fifth causes of action maintain that Plaintiff is entitled to benefits under the terms of the Plan, they are subject to dismissal because Plaintiff has an adequate remedy for wrongful denial of benefits under § 502(a)(1)(B).

Additionally, Plaintiff has not pled sufficient facts to allow the Court to "infer more than the mere possibility of misconduct" with regard to the statements allegedly made by Defendants, which form the basis for Plaintiff's claims for affirmation and equitable estoppel. As an initial matter, the Court cannot determine whether any of the statements alleged in the fourth and fifth causes of action are attributable to Defendant Prudential. Moreover, the statements attributed specifically to Rite Aid or generally to "Defendants" involve "coverage," which does not appear to be at issue. (*See id.* ¶ 40) (Defendants represented "that Plaintiff had accidental dismemberment *coverage* on his health pertaining to his ability to work under subject policy"); (*id.* ¶ 40) ("Defendants informed Plaintiff that Plaintiff was *covered* under subject policy"); (*id.* ¶ 42) (Defendants "misrepresented to Plaintiff the policy's *coverage* terms"); (*id.* ¶ 43) (Defendants conveyed "that so long as Plaintiff continued to pay the premiums, subject policy would provide *coverage* for Plaintiff in the event that a doctor determined that Plaintiff was unable to work due to accidental dismemberment injury"); (*id.* ¶¶ 44-45) (Plaintiff was neither given a copy of the summary plan documents nor advised "that any previous condition would bar him from *coverage* under the subject policy."). Defendants concede that Plaintiff had coverage under the Plan and neither side has alleged that Plaintiff was categorically barred from coverage because of a previous condition.

Construing the complaint in the manner most favorable to the Plaintiff, the Court can only assume that the Plaintiff is using and interpreting the term "coverage" to mean, "entitlement to benefits," but even so, the Court does not understand the complaint to allege that Defendants ever told Plaintiff that he was entitled to benefits for the loss of his sight under the specific circumstances at issue in this case. On the other hand,

10

what is somewhat troubling to the Court is Plaintiff's allegation that he never received summary plan documents or a copy of the Plan. It appears that in some instances, failure to provide a copy of summary plan documents or other information about the plan may constitute a breach of fiduciary duty,[2] although Plaintiff did not specifically allege a breach of fiduciary duty on this basis. Thus, in reviewing the complaint in its current form, the Court cannot determine what statements Defendants made that would give rise to a claim for equitable estoppel or give the Court a basis to alter the terms of the Plan. Accordingly, the Court concludes that even if Plaintiff is entitled to seek simultaneous relief under § 502(a)(1)(B) and § 502(a)(3), Plaintiff's fourth and fifth causes of action must still be dismissed because they fail to state a claim.

Before turning to Plaintiff's final claim, the Court wishes to address an argument that Defendants advance as an additional basis for dismissing Plaintiff's fourth and fifth causes of action. Citing a number of pre-*Amara* cases, Defendants suggest that a party's oral representations may never be used to modify the written terms of a plan. The Court declines to adopt this argument as a basis for dismissal. A bright line rule that a defendant's oral representations, no matter how inaccurate or misleading, may never justify equitable relief that alters the written terms of a plan seems inconsistent with *Amara* and its progeny, including *McCravy*. While this Court would not go as far as

---

[2] *See Latimer v. Washington Gas Light Co.*, 2012 WL 2087783 (E.D. Va. June 7, 2012) ("Many courts have recognized ERISA's requirement on plan administrators to provide participants with plan information as a duty owed by plan administrators as fiduciaries and failure to provide such information as a breach of fiduciary duties."). However, a plaintiff seeking to recover on this basis "must show some significant reliance upon, *or* possible prejudice flowing from, the lack of notice of an accurate description of the terms of the plan." *Id.* (quoting *Gable v. Sweetheart Cup Co., Inc.,* 35 F.3d 851, 859 (4th Cir. 1994). Plaintiff's claim for breach of fiduciary duty was not advanced on this basis, but Plaintiff may amend the complaint to assert such a claim if he believes it to be warranted and can make the requisite showing of reliance or prejudice.

11

to say that such an argument is "dead in the water after *Amara*," *see Strickland*, 2012 WL 4511367 at *7, it would note that the rule cited by Defendants has the potential to create the same type of moral hazard that Judge Duffy and the Fourth Circuit were concerned about in *McCravy*.[3]  Thus the Court declines to adopt Defendants' argument as an additional basis for dismissing the fourth and fifth causes of action.

### D. CAUSE OF ACTION 6

Plaintiff's sixth cause of action for unjust enrichment must be dismissed for failure to state a claim.  Like his third cause of action, Plaintiff's claim for unjust enrichment is simply a reiteration of Plaintiff's claim for wrongful denial of benefits.  Additionally, Plaintiff alleges that "Defendants never intended to pay any accidental dismemberment benefits, even against the treating physician's written documentation of injury," (Compl. ¶ 58), however, he offers absolutely no facts beyond the denial of his claim for benefits to support the allegation.  Consequently, the sixth cause of action will be dismissed.

### III. JURY DEMAND

The Fourth Circuit has held that "proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury." *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 222 (4th Cir. 2005) (quoting *Berry*

---

[3]Although he concluded that then existing precedent compelled him to rule for the Defendants in *McCravy*, Judge Duffy noted that the rule in place created perverse incentives: "[W]hile this Court is compelled to such a holding by the law of ERISA as interpreted by higher courts, it cannot ignore the dangerous practical implications of this application. The law in this area is now ripe for abuse by plan providers, which are almost uniformly more sophisticated than the people to whom they provide coverage.  With their damages limited to a refund of wrongfully withheld premiums, there seems to be little, if any, legal disincentive for plan providers not to misrepresent the extent of plan coverage to employees or to wrongfully accept and retain premiums for coverage which is, in actuality, not available to the employee in question under the written terms of the plan . . . .  Plaintiff's allegations in this case present a compelling case for the availability of some sort of remedy . . . ." *McCravy v. Metro. Life Ins. Co.*, 743 F. Supp. 2d 511, 524 (D.S.C. 2009) *rev'd and remanded,* 690 F.3d 176 (4th Cir. 2012).

*v. Ciba–Geigy,* 761 F.2d 1003 (4th Cir. 1985)); s*ee also Cherepinsky v. Sears Roebuck & Co.*, 455 F. Supp. 2d 470, 474 (D.S.C. 2006) (acknowledging that "a review of Fourth Circuit case law reveals a theoretical maze of interpretations wherein courts have taken many different approaches," but concluding "that it is still good law in the Fourth Circuit that ERISA actions are equitable in nature and are for the Court to decide rather than the jury."). Thus, the Court grants the Defendants' motion to strike the Plaintiff's demand for a jury trial.

## **CONCLUSION**

For the reasons set forth above, the motion to dismiss and to strike the jury demand is granted. The Court dismisses all causes of action with respect to Defendant Rite Aid and causes of action 3-6 with respect to Defendant Prudential. These causes of action are dismissed with prejudice, except that such dismissal is made without prejudice to Plaintiff's right to file additional causes of action as set forth in footnote 2, if appropriate.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

August 5, 2014
Greenville, South Carolina